UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at Lexington

| | | |
|---|---|---|
| JAMES HIGHTOWER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 5:25-cv-00114-SCM-MAS |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DENISE BURKETT, *et al.*, | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

The *pro se* Plaintiff, James Hightower, is a Kentucky inmate currently imprisoned at Luther Luckett Correctional Complex. [Dkt. 59 at 2]. The operative Complaint in this case, [Dkt. 59], alleges misconduct by Denise Burkett of the Kentucky Justice and Public Safety Cabinet and Dawn Patterson, John Golff,[1] and "Christian" of Wellpath LLC, a private company contracting with the Kentucky Department of Corrections ("KDOC") to provide medical services to inmates. The gist of the Complaint is that the medical staff at the Northpoint Training Center correctional institution gave the results of Hightower's x-ray to another inmate so that inmate could deliver the results to Hightower's cell. Hightower says this violated his rights under the Eighth and Fourteenth Amendments and the Health Insurance Portability and Accountability Act ("HIPAA"). He is wrong. Hightower has failed to

[1] This Defendant's name is spelled "Golff" in the docket and the live Complaint, [Dkt. 59], but is spelled "Goff" in the Defendants' Motion to Dismiss, [Dkt. 63 at 1]. For consistency, the Court uses the Complaint's spelling throughout this Opinion.

state a claim upon which relief can be granted, so the Court will grant the Defendants' Motions to Dismiss and will dismiss the Complaint with prejudice as to all Defendants.

**I. Facts**

According to the operative Complaint, [Dkt. 59], the facts of this case stem from a single incident in March 2024. The Plaintiff was incarcerated at the Northpoint Training Center at that time, when he says the "Defendant Christian ARPN (Provider) gave the result of [the Plaintiff]'s x-rays to [a] Nurse to send to [the Plaintiff] in Dorm six lower right bed 13." [Dkt. 59 at 4]. Then, "Defendant Jane Doe," "an employee of Wellpath who [has] a contract with the Kentucky Department of Corrections" to provide inmates with medical treatment, "proceeded to call an inmates runner" and gave "said medical information to the inmate to be taken to dorm six where it ended up being placed on [the Plaintiff's] bed." [*Id.* at 4 – 5]. The Plaintiff asserts that this conduct violated his "right for his medical information to stay confidential" because he did not give prior written consent for his medical information to be shared with another person. [*Id.* at 5].

The Plaintiff filed a grievance form explaining that when he returned to his bed, he found "a piece of paper from medical stating the results of my treatment of x-rays that were diagnosis [of his] right knee," which was "a violation of HIPPA Act." [*Id.* at 5]. Defendant Golff, who is also an employee of Wellpath, then responded to the grievance form by stating that after review of camera footage, it was determined

that the Plaintiff's medical documents remained sealed and that nobody else viewed the Plaintiff's medical records. [*Id.*].

The Plaintiff then appealed the initial grievance decision, stating that it was inappropriate for medical staff to give medical information to someone other than medical staff for transmission without his express permission. [*Id.* at 6]. Defendant Patterson, who is likewise an employee of Wellpath, then responded to the appeal by stating that medical information "can be sent via institutional mail if it is sealed." [*Id.*].

The Plaintiff further appealed this determination to Defendant Burkett, an employee of the Justice and Public Safety Cabinet, arguing that his medical information was not sealed but rather "was a folded piece of paper that had [his] name written on the back" and that it was simply given to another person, not sent through institutional mail. [*Id.*]. In turn, Defendant Burkett responded to the appeal by stating that all mail shall be opened, inspected, or read to check for contraband and that mail going through the mail room may be inspected by mail room staff. [*Id.* at 7]. The Plaintiff alleges that the responses to his grievances evince a cover-up and that Wellpath failed to train its employees properly, which resulted in using an inmate runner to deliver his medical information and a violation of his rights. [*Id.* at 7–8].

The Plaintiff, acting *pro se*, first filed a lawsuit in this Court on April 10, 2025, and was granted *in forma pauperis* status on April 14, 2025. [Dkt. 1; Dkt. 6]. Upon initial screening, the Plaintiff's claims against Burkett, Patterson, and Golff in their

individual capacities were dismissed with prejudice. [Dkt. 7 at 5]. The Plaintiff appealed that dismissal on May 13, 2025, and the Court of Appeals dismissed the appeal for lack of jurisdiction on June 24, 2025. [Dkt. 25]. The case then proceeded in this Court.

The Defendants filed Answers, discovery began, and the Plaintiff filed a Motion to Amend his Complaint on October 10, 2025 after significant motion practice. [Dkt. 41]. Magistrate Judge Stinnett prepared a Report and Recommendation recommending that the Court grant in part and deny in part the Plaintiff's Motion to Amend, [Dkt. 50], which this Court adopted in full on December 5, 2025. [Dkt. 56]. The Plaintiff then filed another Motion to Amend his Complaint on January 13, 2026, [Dkt. 57], which this Court granted on January 16, 2026. [Dkt. 58]. The Plaintiff's Second Amended Complaint asserts the Plaintiff's claims in this case arise under 42 U.S.C. § 1983. [Dkt. 59 at 3].

Based on the series of events above, the Plaintiff seeks a declaration that his rights were violated, a refund of all money debited against his inmate account in the course of prosecuting this case, and a permanent injunction against the practice of giving medical information to another inmate or to non-medical staff. [*Id.* at 9]. He also demands that a copy of every current and new contract between the KDOC and every medical provider in every Adult Correctional Institution "be place[d] in the legal office of every Adult Correctional Institution for the inmate population to be able to check out and read," among other demands, including that the KDOC pay him

"$100.00 a day each day until the contractor starts following the contract or correct the problem that has caused the pain and suffering of the Petitioner." [*Id.* at 14].

Defendants Dawn Patterson, John Golff, and "Christian" filed a Motion to Dismiss the Second Amended Complaint on February 9, 2026. [Dkt. 63]. Then Defendants Denise Burkett and the KDOC filed their Motion to Dismiss the Second Amended Complaint on April 17, 2026. [Dkt. 74]. After the Motions to Dismiss were fully briefed, this matter was reassigned to the undersigned on June 2, 2026. [Dkt. 80].

## II. Analysis

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Ohio v. United States*, 849 F.3d 313, 318 (6th Cir. 2017) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). "To survive a motion to dismiss, a complaint must present facts that, if accepted as true, sufficiently 'state a claim to relief that is plausible on its face.'" *Coley v. Lucas County*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible when a plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Twombly*, 550 U.S. at 555)). The "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.

A *pro se* plaintiff's pleadings receive a "more liberal construction" than a party who is represented by counsel. *Beal v. Vanalstine*, No. 24-1224, 2024 WL 5482662, at *1 (6th Cir. Nov. 20, 2024). But the pleading must always go beyond labels, conclusions, and formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 625–26 (6th Cir. 2013) (citing *Twombly*, 550 U.S. at 562).

The Court views the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Riverview Health Inst. LLC*, 601 F.3d at 512. All reasonable inferences are drawn in favor of the plaintiff. *Coley*, 799 F.3d at 537 (citing *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir.2014)). "The Court need not, however, 'accept the plaintiff's legal conclusions or unwarranted factual inferences as true.'" *Sandmann v. WP Co. LLC*, 401 F. Supp. 3d 781, 787 (E.D. Ky. 2019) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). The defendant ultimately has the burden of demonstrating that the plaintiff's complaint fails to state a claim. *Crugher*, 761 F.3d at 614.

Applying this standard, the Court determines that the Plaintiff's § 1983 claims cannot survive the Defendants' Motions to Dismiss.

**A. The Plaintiff's claims.**

First, the Court highlights the difficulty in determining from the Second Amended Complaint what, exactly, the Plaintiff is trying to plead. The form of the

Plaintiff's pleading made parsing the Plaintiff's Complaints difficult for both Judge Reeves and Magistrate Judge Stinnett earlier in this litigation. [*See generally* Dkt. 7; Dkt. 50]. Despite that difficulty, Judge Reeves and Judge Stinnett understood the Plaintiff to be bringing a claim for violation of privacy under the Eighth and Fourteenth Amendments against Defendants Burkett, Patterson, and Golff in their official capacities. [Dkt. 50 at 4]. It appears that the operative Complaint asserts the same types of claims.

The claim against Patterson and Golff is remediable only through injunctive relief because the Plaintiff did not allege that he suffered a physical injury—which means monetary damages are unavailable to him. [Dkt. 50 at 2]; *see also* 42 U.S.C. § 1997e(e); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). The same is also true for Defendant Burkett because she is employed by the KDOC and the Eleventh Amendment deprives federal courts of jurisdiction over claims for money damages against a state and its agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993).

The Second Amended Complaint also appears to add two new Defendants ("Christian" and "Elders") to the Plaintiff's unspecific Eighth and Fourteenth Amendment claim. [*See* Dkt. 50 at 8–9]. Judge Stinnett allowed the Plaintiff's claims to proceed against these Defendants in their individual and official capacities since it appeared as though "Christian" and "Elders" did more than the other Defendants—*i.e.*, they allegedly directly handled the Plaintiff's medical records rather than merely denied his grievances. [*Id.* at 9–10]. However, Judge Stinnett concluded that

regardless of how the Plaintiff's claims are styled, they can all be remedied only by injunctive relief. [*Id.* at 12 (citing 42 U.S.C. § 1997e(e))].

The Court agrees with Judge Stinnett's characterization of the Plaintiff's claims in this case. Thus, the Court proceeds with the understanding that the Plaintiff raises right to privacy claims under the Eighth and Fourteenth Amendments against all Defendants.

**B. The Plaintiff lacks standing.**

The Plaintiff's claims fail first and foremost because he has no standing. The Plaintiff claims that the Defendants mishandled his medical records on one occasion in the past, and he is seeking injunctive relief to prevent them from mishandling his medical records again in the future.[2] But whether there is any risk that they will actually do so is purely speculative. The Plaintiff identifies no similar occurrences and no policies from the KDOC allowing inmates to deliver another inmate's medical information. And he alleges nothing to suggest that he is at real risk of this occurring to him again. "[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief." *Grendell v. Ohio Supreme Ct.*, 252 F.3d 828, 833 (6th Cir. 2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)). Without a showing of any real threat of future harm from a KDOC policy or practice

[2] To be sure, the Plaintiff is seeking some forms of monetary relief in the operative Complaint. But it appears that the monetary relief he is seeking is forward-looking, equitable monetary relief, not damages. *Cf. NLRB v. Starbucks Corp.*, 159 F.4th 455, 474 (6th Cir. 2025) (observing that monetary relief can be equitable in nature under the right circumstances). In any event, the Court has already held that the Plaintiff cannot seek monetary damages in this case, [Dkt. 7 at 3–4; Dkt. 50 at 2]. So the only remedy available to him is injunctive relief, which appears to be all that he is seeking.

allowing an inmate to deliver another inmate's medical information, the Plaintiff's single past incident precludes a finding that he possesses the standing necessary to seek forward-looking relief. There is simply not a sufficiently concrete and imminent future injury to give rise to standing for equitable relief. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1017 (6th Cir. 2022) (requiring "an imminent future injury" for "forward-looking equitable remedies").

**C. The Plaintiff's claims against the Wellpath Defendants fail on their merits in any event.**

Setting aside the issue of standing, the Plaintiff's claims still fail.

Wellpath LLC is "a private company contracting with [the KDOC] to provide medical services to inmates." [Dkt. 63 at 2]. While Wellpath is a private entity, it may be subject to liability under § 1983. "[A] private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993), *abrogated in part on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994). Defendants "Christian," Dawn Patterson, and John Golff are all alleged to be employees of Wellpath and so will be referred to collectively as the "Wellpath Defendants."[3] [*Id.* at 1]. The Court has already passed

[3] The Plaintiff also asserts claims against an unnamed nurse, Jane Doe. [Dkt. 59 at 5]. However, the Court previously warned the Plaintiff that he could not proceed against an unnamed, unknown, and unserved Jane Doe defendant. [Dkt. 7 at 3; Dkt. 50 at 2]. Because the Plaintiff never identified this Defendant after being warned that he would need to identify her, and because there has been an opportunity for limited discovery as to her identity, the Court concludes that all claims against Defendant Jane Doe should be dismissed. *See Kirschke v. MacLaren*, No. 18-1606, 2018 WL 6177162, at *3 (6th Cir. Nov. 8, 2018) (affirming district court's dismissal of claims against Doe defendants because the plaintiff "did not comply with the district

on some of the Plaintiff's claims against the Wellpath Defendants. For instance, the Court previously dismissed all claims against Patterson and Golff in their individual capacities with prejudice. [Dkt. 7 at 3, 5]. The Court likewise determined that the Plaintiff was unable to seek monetary damages in this case. [*Id.* at 3]. And although the Court previously allowed an individual-capacity claim to proceed against Defendant "Christian," [Dkt. 50 at 13; Dkt. 56 at 1], the Second Amended Complaint makes it clear that the Plaintiff is suing Defendant "Christian" solely in his official capacity. [Dkt. 59 at 3 (checking "Official capacity" box)].

The takeaway is this: Only the Plaintiff's claims for injunctive relief under the Eighth and Fourteenth Amendments remain against the Wellpath Defendants in their official capacities. And those claims fail for the reasons that follow.

To state a claim under the Eighth Amendment, the Plaintiff would need to show that officials exhibited "'deliberate indifference' to a substantial risk of serious harm" to him. *Pearson v. Michigan Dep't of Corr.*, 170 F.4th 1027, 1037 (6th Cir. 2026) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 828). But the Plaintiff does not allege deliberate indifference to his medical care; rather, Plaintiff alleges indifference to the handling of his medical documents. [*See* Dkt. 59 at 4]. At base, Plaintiff's claim is one of privacy. Incarcerated plaintiffs "certainly do have a right to privacy, but that right is properly found in the Fourteenth Amendment's substantive due process rights." *Carnes v. Hall*, 665 F. Supp. 3d 831, 843 (E.D. Ky.

---

court's order to amend his complaint to identify at least one Doe defendant." (citing Fed. R. Civ. P. 41(b))).

2023). The Eighth Amendment therefore provides no grounds of relief for Plaintiff's claims.

While the Plaintiff's claim is better grounded in the Fourteenth Amendment, it fares no better when analyzed under that provision of the Constitution. The Sixth Circuit has instructed that "inmates have a Fourteenth Amendment privacy interest in guarding against disclosure of sensitive medical information from other inmates subject to legitimate penological interests." *Moore v. Prevo*, 379 F. App'x 425, 428 (6th Cir. 2010) (footnote omitted). But "[t]he Sixth Circuit has limited such a violation to only two instances: '(1) where the release of personal information could lead to bodily harm,' and (2) where the information released was of a 'sexual, personal, and humiliating nature.'" *Sharber v. City of Louisville*, No. 3:16-cv-P526-DJH, 2017 WL 2221711, at *6 (W.D. Ky. May 19, 2017) (internal quotation marks and citations omitted). And the Sixth Circuit has also explained that inmates have no constitutional privacy right barring disclosure of medical information to corrections officers. *Moore*, 379 F. App'x at 427. So, to state a claim for a violation of the Plaintiff's right to privacy under the Fourteenth Amendment, he would need to show either that the release of his personal information could lead to bodily harm or that the information released was of a sufficiently humiliating nature. *See Sharber*, 2017 WL 2221711, at *6.

Here, the Plaintiff failed to allege that any medical information was released at all. To be sure, the Plaintiff alleges that other inmates carried his medical information to his dorm on behalf of medical staff, but at no point does he allege that

the information was read by anyone other than himself, let alone another inmate—or that, even if it was read by another inmate, that the disclosure of his X-rays would lead to bodily harm or would be humiliating. Thus, he failed to state a claim under the Fourteenth Amendment.

But even if one were to assume for the sake of argument that he had established a constitutional violation, the Plaintiff's claims against the Wellpath Defendants would fail for still another reason. Recall that those claims are official-capacity claims. This means that they are really just claims against Wellpath. *See Kentucky v. Graham*, 473 U.S. 159, 165 ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). But § 1983 does not allow a remedy to be awarded based on a theory of vicarious liability or *respondeat superior*. Instead, liability against an entity like Wellpath—including liability for injunctive relief—must be based on a finding that the entity itself caused the harm at issue. *See Los Angeles County v. Humphries*, 562 U.S. 29, 36 (2010); *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). This requires proof that the entity was the "moving force" behind the constitutional violation—meaning that the violation was caused by the entity's "policy or custom." *Monell*, 436 U.S. at 694. Hightower cannot meet this standard.

An official policy can be shown by "'(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or

supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.'" *Wiley v. City of Columbus*, 36 F.4th 661, 670 (6th Cir. 2022) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)). The Plaintiff claims a policy of inadequate training, and he also makes opaque references to the facility's mail delivery policy. But neither of these allegations suffices to state a claim of an illegal policy or custom.

First, the Plaintiff cannot point to an official Wellpath policy allowing delivery of his medical information by another inmate. To be sure, Defendant Patterson referred to the mail policy in responding to the Plaintiff's appeal, [Dkt. 59 at 6], but the Plaintiff admits that his medical information was *not* delivered as part of that policy. [Dkt. 59 at 6]. If anything, this would point to a failure to follow an official policy, not the existence of an illegal one. Moreover, the institutional mail policy is the policy of the KDOC, not of the Wellpath Defendants providing medical care at the institution. So if the formal mail policy was illegal, that was KDOC's fault, not Wellpath's.

It is true that an illegal policy can theoretically be established based on a single act as opposed to a formal policy. But for that to happen, the actor must be a policymaker with final policymaking authority. *Moldowan v. City of Warren*, 578 F.3d 351, 394 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482 (1986)). And the policymaker must make a deliberate choice to pursue a course of action that proves to be the moving force behind the Plaintiff's constitutional violation. *Burgess*, 735 F.3d at 479 (citing *Pembaur*, 475 U.S. at 483, 484–85). Here,

there is no reason to believe that any of the Wellpath Defendants meet this standard. Thus, to the extent the Plaintiff is claiming that he was injured by some illegal mail policy, his claim fails as a matter of law.

The Plaintiff's failure-to-train claim is similarly deficient. *Cf. Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("[C]ulpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985))). The Plaintiff alleges that Wellpath did not "train[] the Defendants properly" on how to deliver an inmate's medical information. [Dkt. 59 at 7]. He does not specify how their training was deficient and does not show that Wellpath was on notice of a pattern of prior similar instances of unconstitutional conduct such that it should have been aware that its training was deficient. This latter point is significant because a pattern of similar instances of unconstitutional conduct is generally required to invoke failure-to-train liability. *Burgess*, 735 F.3d at 478 (quoting *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010)); *Connick*, 563 U.S. at 62).

Of course, in limited instances, a plaintiff can establish liability for failure to train based on a single constitutional violation without proof of previous similar instances of unconstitutional conduct. But such liability can arise only where the single incident is the result of a failure to "'train . . . employees to handle recurring situations presenting an obvious potential for a constitutional violation.'" *Helphenstine v. Lewis County*, 60 F.4th 305, 323 (6th Cir. 2023) (quoting *Shadrick v. Hopkins County*, 805 F.3d 724, 738–39 (6th Cir. 2015)). "This sort of claim is available

only 'in a narrow range of circumstances,' where a federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with specific tools to handle recurring situations.'" *Id.* (alteration in original) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)). The Plaintiff, however, has provided no reason to believe that his case falls within this narrow range. And, indeed, there appears to be no such reason. The Complaint gives no reason to believe that the alleged federal rights violation was the result of a recurring situation rather than a unique one.

Finally, the Plaintiff also appears to argue that he has a claim arising under HIPAA. However, HIPAA does not create a private right that can be enforced through § 1983. *See Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 139 (8th Cir. 2009) (holding that HIPAA "cannot be privately enforced either via § 1983 or through an implied right of action"); *Sharber*, 2017 WL 2221711, at *6 (citations omitted) (denying state prisoner's § 1983 claim founded on a purported violation of HIPAA because "[p]rivate citizens have no standing to sue a covered entity for a violation of HIPAA."). Therefore, HIPAA provides no basis for any relief in this case.

**D. The Plaintiff's claims against the Kentucky Department of Corrections and Burkett likewise fail.**

The Second Amended Complaint also alleges claims against the KDOC, Denise Burkett in her official capacity, and "Elders"[4] in his official and individual capacity. These Defendants will be referred to collectively as the "KDOC Defendants."

[4] Defendant "Elders" is alleged to be a "Correctional Officer," and so must be employed by the KDOC. [Dkt. 59 at 12]. The KDOC Defendants' Motion to Dismiss does not reference "Elders," but the Plaintiff's claim against him is properly dismissed for

First, there can be no liability for "Elders" in his individual capacity. Suits against state officials in their individual capacity under Section 1983 "seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–238 (1974)). As explained above, "[o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell,* 436 U.S. at 690 n. 55 (1978)). Accordingly, the official capacity suits against Defendants "Elders" and Burkett are against KDOC.

Here, the Second Amended Complaint makes only threadbare assertions against "Elders." He appears in just four sentences across the entire Second Amended Complaint. The first two references are identical and identify him as the recipient of the Plaintiff's medical information from an inmate runner. [Dkt. 59 at 7, 12]. The second pair of references are likewise identical and simply note that he was "the Correctional Officer that was working dorm Six the day of the incident" and was "the staff member to receive the Medical Information from the inmate then had the information placed on Petitioner[']s Bed in a[n] open wing dorm." [*Id.* at 8, 12–13].

For the same reasons as the Wellpath Defendants, these allegations are insufficient to establish a violation of the Plaintiff's constitutional rights. The Plaintiff would need to show either that the release of his personal information could lead to bodily harm or that the information released was of a sufficiently humiliating nature. But there is no evidence that the Plaintiff's x-rays were even seen by "Elders"

---

failure to state a claim, as laid out below.

or anyone else for that matter. And even if "Elders" did see the Plaintiff's x-rays, there is no evidence indicating that they were of a humiliating nature. Without such evidence, the Plaintiff cannot possibly establish a constitutional violation. Thus, "Elders" is not liable in his individual capacity.

Second, there can be no liability for the KDOC Defendants in their official capacities either. The Eleventh Amendment generally provides states with immunity from suit. *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (citing *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021)). This immunity extends to their agencies and officials acting within their official capacity. *Id.* (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). However, a court may entertain an action against a state if it falls under the exception of *Ex parte Young*, which allows a state to be sued for forward-looking relief in equity to end an ongoing violation of federal law. *Id.* (citing *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)).

Here, the Plaintiff is not entitled to injunctive relief. For the reasons previously stated, the Plaintiff's claims to relief find no purchase in the Eighth and Fourteenth Amendments. Even assuming for the sake of argument that his rights under HIPAA were violated by the manner of his medical information's delivery, he cannot seek relief because HIPAA creates no private right that is enforceable under § 1983. *See Adams*, 352 F. App'x at 139 (citations omitted); *Sharber*, 2017 WL 2221711, at *6. And its alternative remedial scheme of enforcement by the Secretary of the Department of Health and Human Services and state attorneys general, 42

U.S.C. § 1320d-5(a), (d)(1), renders relief under *Ex parte Young* unavailable. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 74 (1996).

## III. Conclusion

For the reasons articulated above, **IT IS ORDERED** as follows:

1) The Wellpath Defendants' Motion to Dismiss, [Dkt. 63], is **GRANTED**.

2) The Kentucky Department of Corrections Defendants' Motion to Dismiss, [Dkt. 74], is **GRANTED**.

3) This matter is **DISMISSED WITH PREJUDICE**.

4) This matter shall be stricken from the Court's active docket.

5) A separate Judgment will be entered.

Signed this 29th day of September, 2026.

S. Chad Meredith, District Judge
United States District Court
Eastern District of Kentucky